J. TIMOTHY NARDELL (State Bar #184444)
NARDELL CHITSAZ & ALDEN LLP
790 Mission Avenue
San Rafael, California 94901
Telephone: (415) 485-2200
Facsimile: (415) 457-1420
Email:    tim@jtnlaw.com

Attorneys for Plaintiff
92498 HOLDINGS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| 92498 HOLDINGS LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES LIABILITY INSURANCE COMPANY, AND DOES ONE through FIVE, inclusive, <br><br> Defendants. | Case No. C-08-01759 CW <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date:   July 22, 2008 <br> Time:   2:00 p.m. <br> Judge:  Hon. Claudia Wilken <br> Dept.:  Courtroom 2 <br>         4th Floor <br>         1301 Clay Street <br>         Oakland, CA 94612 |

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Plaintiff 92498 Holdings LLC and defendant United States Liability Insurance Company ("USLIC") jointly submit the following Case Management Conference statement in connection with the Case Management Conference scheduled for July 22, 2008.

1. **JURISDICTION AND SERVICE**

Plaintiff filed this case in Mendocino County Superior Court. Defendant timely filed a Notice of Removal to this Court under 28 U.S.C. § 1441(b), on the ground that plaintiff is a California Limited Liability Company and defendant is a corporation incorporated under the laws of the State of Pennsylvania, and the amount in controversy in this action exceeds $75,000. Plaintiff did not attempt to remand the case back to state court.

All parties named in the action have been served. The parties are, at present, unaware of any additional parties who should be named in the action.

2. **FACTS**

Plaintiff is the owner of a piece of real property in Mendocino, California (the "Property"). The Property, commonly known as 18501 Rays Road, Philo, California, is located in the Anderson Valley. It consists of a 160 acre parcel, including structures, which was apparently used by former owners, at some time, as a resort. In December 2002, plaintiff purchased the Property and a steel bridge (the "Shenoa Bridge") located at 18520 Rays Road. Plaintiff contends that from the time of plaintiff's purchase to present, the Property has been used only as an additional residence for Jeffrey Stuart Skoll and his family.

Plaintiff obtained a comprehensive personal liability insurance for the Property from USLIC, through an existing multiple-residence policy that USLIC issued to named insured "Jeffrey Stuart Skoll," policy no. CPL 1100925 (hereinafter "the Policy"), effective from 5/16/02 to 5/16/03, and renewed effective 5/16/03, 5/16/04, and 5/16/05 (policy nos. CPL 1100925A, CPL 1100925B, and CPL1100925C, respectively). By endorsement dated December 23, 2002, USLIC agreed that 92498 Holdings would be an additional insured under the Policy. Under the Policy, USLIC agreed, among other things, to insure plaintiff for any third-party claim for "property damage" caused by an "occurrence" to which the Policy applies.

The Property is located on the south side of the Navarro River. Access to the Property is by means of an easement across neighboring property from Rays Road, on the north side of the Navarro. This easement crosses the Navarro by means of the Shenoa Bridge, which plaintiff's predecessor-in-interest at the Property constructed, beginning in approximately 2000. The Shenoa Bridge extends from plaintiff's property, on the south side of the Navarro to the north side of Navarro. Plaintiff contends that the Shenoa Bridge is the sole means of vehicular access to the Property. Plaintiff purchased the easement across the Navarro River and the Shenoa Bridge when plaintiff purchased the Property.

During the winter storms of December 2005 and January 2006, the north bank of the Navarro River immediately downstream from the Property experienced unprecedented and severe erosion. The Van Zandt family who owns the property on the north bank of the Navarro and operate the Van Zandt Redwood View Resort on their property, experienced a loss of approximately one acre of land. Continued erosion threatened the Van Zandts' water supply for their property and threatened to cause serious harm to their resort business.

In January 2006, the Van Zandts reported the erosion damage to the plaintiff's property manager. The Van Zandts alleged that the loss of their land and their resulting damages were caused by the Shenoa Bridge. In March 2006, experts for the Van Zandts issued a report concluding that the Shenoa Bridge caused the erosion, damaging their property.

Plaintiff submitted the Van Zandts' claim to USLIC. On June 8, 2006, USLIC rejected the insured's tender of the Van Zandts' claim. The bases were as follows:

- the Shenoa Bridge does not qualify as an "insured location," "residence premises," or one-family dwelling;
- the 160 acres of land do not qualify as an "insured location," "residence premises," or one-family dwelling;
- the "insured location" exclusion;
- the business exclusion;
- the "no voluntary payments" provision.

USLIC also reserved the right to rescind the Policy on certain grounds.

Since the initial coverage determination, and until shortly before the filing of plaintiff's complaint, the parties exchanged additional communications and documentation regarding coverage for the Van Zandts' claim. USLIC's initial coverage position did not change.

Having been declined coverage, plaintiff addressed the Van Zandts' claim on its own. Beginning in or about March and continuing through approximately December 2006, Plaintiff and the Van Zandts commissioned expert reports to determine the cause of damage to the Van Zandts' property. The reports that plaintiff commissioned and independent reports supported the Van Zandts' conclusion that the Shenoa Bridge was the principal cause of the damage to the Van Zandts' property.

In December 2006, plaintiff entered into settlement negotiations with the Van Zandts. The Van Zandts asserted that a settlement was necessary to fund emergency repairs to the north bank of the Navarro River. Without a settlement, the Van Zandts stated that they intended to hold plaintiff liable for any further erosion damage, including the possible loss of the principal spring water source on their property, exposing plaintiff to increased liability. Plaintiff determined that under the circumstances, an early settlement with the Van Zandts was the most prudent approach to limit plaintiff's liability.

In January 2007, plaintiff entered into a Settlement and Release Agreement with the Van Zandts, which resolved the Van Zandts' claim. Under the settlement, plaintiff agreed to pay $430,000 to repair the Van Zandts' property damages to date, and up to $150,000 for future repair work. In exchange, the Van Zandts agreed to release any and all claims against plaintiff (i) for any damages, costs, fees or expenses incurred in connection with the erosion damage; and (ii) for any damages, and all known and unknown causes of action arising out of the construction or maintenance of the Shenoa Bridge. The Van Zandts subsequently tendered bills for repair work in the amount of $108,478.90. On December 31, 2007, the Van Zandts gave plaintiff notice that the Van Zandts deemed that all repair work required under the settlement agreement had been completed. In January 2008, plaintiff provided USLIC with the accounting of plaintiff's losses that USLIC had requested, and again demanded that USLIC honor its obligations under the Policy by agreeing to cover plaintiff's losses arising from the Van Zandts' claim. USLIC declined to pay the claim, and this action followed.

Plaintiff seeks to recover its losses for settlement, third-party investigative costs, and attorneys' fees in defense of the claim, amounting to approximately $642,129.36. Plaintiff also seeks damages for bad-faith denial of its claim.

### 3.   LEGAL ISSUES

#### A.   Legal Issues According to Plaintiff.

USLIC contends that there was no coverage for the Van Zandts' claim because plaintiff was using the Property for "business" purpose, and because the injuries to the Van Zandts property did not arise from the "premises." Plaintiff contends that USLIC wrongly denied its defense and indemnity obligations to plaintiff under the terms of the Policy. Plaintiff contends that grounds for USLIC's decision to decline coverage were erroneous, and USLIC wrongfully declined to revisit its initial coverage decision. Plaintiff contends that USLIC's actions constitute a breach of contract and bad faith.

The "business exclusion" in the Policy provides, in relevant part, that the insurance coverage under the Policy "do not apply to 'bodily injury' or 'property damage'" .... (b) Arising out of or in connection with a 'business' engaged in by an 'insured.'" Plaintiff contends that it purchased the Property for use as an additional residence for Mr. Skoll and his family, and the Property has only been used for a residential purpose. Therefore, plaintiff contends that the "business" exclusion is inapplicable.

The "premises" exclusion in the Policy provides that personal liability coverage does not apply to property damage arising out of a "premises" "that is not an 'insured location." An "insured location" is defined as (4.a) the "residence premises" or (4.b) "the part of any other premises, other structures and grounds used by you as a residence…" or (4.c) "any premises used by you in connection with a premises in 4.a and 4.b above." Plaintiff contends that since the Shenoa Bridge was the sole means of access to the property and was owned by plaintiff, therefore, it should be deemed as part of the "premises" under definition 4.d, above.

Under California law, USLIG had a duty to defend any claim that was potentially covered under the policy. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). USLIC's duty to defend arose as soon as the Van Zandts' claim was made and notice was given to USLIC. The breach

4
JOINT CASE MANAGEMENT CONFERENCE STATEMENT

of the duty to reasonably investigate "*all* of the possible bases" for a claim constitutes a bad faith breach of the covenant of good faith and fair dealing; an insurer cannot deny payments to its insured without fully investigating the grounds for its denial. *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062 (2007) (emphasis in original). In considering the claim, USLIC was required to give as much consideration to the interests of the insured as to its own interests. *Silberg v. California Life Ins. Co.* 11 Cal. 3d 452, 460 (1974). The implied covenant of good faith and fair dealing extends not only to the policy holder, Mr. Skoll, but also to additional insured such as plaintiff. *Northwestern Mut. Ins. Co. v. Farmers' Ins. Group*, 76 Cal.App.3d 1031, 1041-42 (1978).

### B. Legal Issues According to USLIC.

USLIC disclaimed coverage under the applicable policy on the grounds that the exclusion for "property damage" "[a]rising out of or in connection with a 'business' engaged in by an 'insured'" barred coverage. USLIC also based its disclaimer on the "insured location" exclusion, which precludes coverage for "property damage" "[a]rising out of a premises ... [o]wned by an 'insured' ... that is not an 'insured location.'" Finally, USLIC reserved the right to rescind the applicable policy on the grounds of material misrepresentations and omissions by the named insured and his representatives in the policy applications and in communications with USLIC and its representatives, including but not limited to (1) the failure to disclose construction on the Property with contract cost of $100,000 or more; (2) the failure to disclose the existence of the Shenoa Bridge; and (3) the statement that the Property was "vacant land."

### 4. MOTIONS

There are no pending motions.

### 5. AMENDMENTS TO PLEADINGS.

The parties do not foresee a need to amend the pleadings at this time.

### 6. EVIDENCE PRESERVATION

The parties do not anticipate that electronic discovery will be relevant to the claims in the action. Plaintiff's employees have preserved its files relevant to the claims in this action.

7. **DISCLOSURES**

The parties have exchanged initial disclosures.

8. **DISCOVERY**

The parties have exchanged informal discovery and initial disclosures to date. The parties have agreed to make an attempt at early mediation through the Court's ADR program before engaging in formal discovery.

A.  **Plaintiff's Anticipated Discovery**

In the event that mediation is unsuccessful, plaintiff anticipates written discovery and depositions as follows:

1. Interrogatories per Rule 33(a)(1), pertaining to the following issues:
    a) Knowledge regarding placement of coverage.
    b) Basis for initial decision to deny claim, including defense.
    c) USLIC's handling of after-acquired information in relation to continued decision to deny claim.
    d) USLIC's affirmative defenses.

2. Rule 34 Document Requests seeking:
    a) Claim file, including all electronic communications.
    b) Underwriting file, including all electronic communications.
    c) Insurance Application.
    d) Documents reviewed, referred to, or identified in denying claim.
    e) Documents reviewed, referred to, or identified in responding to interrogatories.
    f) Claim handling manuals/ training materials
    g) Handling of other similar claims, and USLIC history deny third party claims, including denial of claims based on the "commercial use" and "premises" exclusions.
    h) Documents relating to USLIC affirmative defenses.

3. Subpoena third party documents:

    a) Documents from USLIC's insurance agent, Sobieski & Bradley, regarding placement of insurance.

Following beginning approximately 60 days after receipt of the above-requested documents and response to written discovery:

4. Rule 30(b)(6) depositions of following persons:

    a) USLIC claims representative(s), including manager(s) who had final authority to deny claim.

    b) Rick Sutton

    c) Sobieski and other agent employee(s), if appropriate

    d) Others identified in USLIC's initial disclosures, responses to interrogatories and documents

5. Rule 36 Requests for Admission (if necessary) regarding the genuineness of documents and any other issues that might narrow the issues in the case.

**B.    Defendant's Anticipated Discovery**

In the event that mediation is unsuccessful, USLIC anticipates taking written discovery and depositions.

**9.    CLASS ACTION**

Non Applicable.

**10.   RELATED CASES**

The parties are not aware of any related cases.

**11.   RELIEF**

Plaintiff has incurred losses for settlement, third party investigative costs, and attorneys' fees in defense of the claim, amounting to $642,129.36. Plaintiff has also incurred attorney's fees to prosecute this action. If plaintiff prevails on its bad faith claim, plaintiff will seek to recover punitive damages in

7

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

amount sufficient to punish and make an example of USLIC. Plaintiff has provided USLIC with documents upon which its damage calculations have been made.

### 12. SETTLEMENT AND ADR

The parties have agreed to Court sponsored early mediation, and intend to conduct mediation before undertaking the expense of formal discovery. The parties have been informed that Matthew Quint, Esq. has been assigned as the mediator for the case. A mediation date has not yet been scheduled. In the event that mediation is unsuccessful the parties are willing to attempt to settle the case before a Magistrate Judge, after engaging in some discovery.

### 13. CONSENT TO MAGISTRATE JUDGE

The case was initially assigned for all purposes to Magistrate Judge James. USLIC objected to the assignment, and the case was reassigned.

### 14. OTHER REFERENCES

The parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. NARROWING OF ISSUES

If the parties determine though discovery efforts that there are no material facts in dispute, the coverage issues in this case may be narrowed by cross motions for summary judgment.

### 16. EXPEDITED SCHEDULE

In the event that early mediation is unsuccessful, the parties anticipate having to engage in written discovery, depositions and some third party discovery. The parties do not believe that this is the type of case that can be handled on an expedited schedule.

### 17. SCHEDULING

The parties think that the case should be ready for trial within 8-12 months, in the event that early mediation is unsuccessful.

### 18. TRIAL

Both sides have requested a jury trial. The parties estimate that this case will require approximately a 7-day trial.

**19. DISCLOSURE OF INTERESTED PERSONS**

The parties have filed certificates of interested parties, as required under Civil Local Rule 3-16.

**A. Plaintiff's List of Interested Persons**

Plaintiff has disclosed the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or party that could be substantially affected by the outcome of this proceeding:

92498 Holdings LLC

Jeffrey S. Skoll Revocable Trust.

**B. USLIC's List of Interested Persons**

United States Liability Insurance Group, including United States Liability Insurance Company.

The Berkshire Hathaway Company.

**20. OTHER MATTERS**

None.

Dated: July 15, 2008

NARDELL CHITSAZ & ALDEN LLP

By: *(signature)*
J. TIMOTHY NARDELL
Attorneys for Plaintiff 92498 HOLDINGS LLC

Dated: July 15, 2008

NIELSEN, HALEY & ABBOT LLP

By: *(signature)*
STEVEN W. CUSICK
Attorneys for Defendant United States Liability Insurance Company

*92498 Holdings, LLC v. United States Liability Ins. Co., et al.*
U.S. District Court for the Northern District of California
Case No. C 08-01759 CW

# PROOF OF SERVICE

I declare that:

I am a citizen of the United States, employed in the County of San Francisco, California. I am over the age of eighteen years, and not a party to the within cause. My business address is 44 Montgomery Street, Suite 750, San Francisco, CA 94104.

On the date set forth below I served the following document described as:

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

[ ]    (BY FACSIMILE) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date.

[X]    **(BY MAIL)** I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Francisco, California.

[ ]    (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

[ ]    (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

*Attorneys for Plaintiff 92498 Holdings, LLC*
J. Timothy Nardell, Esq.
Law Offices of J. Timothy Nardell
790 Mission Avenue
San Rafael, CA 94901
Tel. (415) 485-2200
Fax. (415) 449-6990

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on July 15, 2008.

Sonia J. Ortiz

PROOF OF SERVICE